[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 343 
 ON APPLICATION FOR REHEARING
This Court's opinion of December 11, 1992, is withdrawn and the following opinion is substituted therefor.
William Chatham appeals from a summary judgment entered in favor of CSX Transportation, Inc. Chatham filed a complaint against CSX in 1990 under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51-60, for damages for a loss of hearing he claimed to have incurred while he was employed by CSX as a carman. CSX moved for a summary judgment on the theory that Chatham's claim was time-barred under the FELA's three-year statute of limitations because he first learned in 1983 that his hearing loss might be work related. Chatham then filed an amended two-count complaint, claiming damages for deterioration of his hearing that had occurred within the three years before he filed this action and based on what he claimed was a negligent assignment by CSX that he says resulted in a subsequent aggravation of his existing hearing problem. The trial court entered a summary judgment in favor of CSX on all of Chatham's claims. Because Chatham did not properly raise any factual issues regarding his amended complaint, we affirm the judgment.
A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; King v.Breen, 560 So.2d 186 (Ala. 1990). In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party.Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991). In determining the existence or absence of a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. Broadmoor Realty,Inc. v. First Nationwide Bank, 568 So.2d 779 (Ala. 1990). However, this Court's reasoning is not limited to that applied by the trial court. Hill v. Talladega College, 502 So.2d 735
(Ala. 1987).
Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of material fact. Grider v.Grider, 555 So.2d 104 (Ala. 1989). Because this action was filed after June 11, 1987, the nonmovant must meet this burden by "substantial evidence." Alabama Code 1975, § 12-21-12; Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Evidence submitted by a nonmovant in opposition to a motion for summary judgment must be in a form admissible in evidence; affidavits must be based on personal knowledge and must contain information *Page 344 
that allows more than speculative inferences; documents must be admissible in evidence as either sworn or certified copies. Rule 56(e), Ala.R.Civ.P.; Perry v. Mobile County,533 So.2d 602, 604 (Ala. 1988). A party must move the trial court to strike any nonadmissible evidence that violates Rule 56(e). Failure to do so waives any objection on appeal and allows this Court to consider the defective evidence. Perry at 604-05.
The record reveals that Chatham and his employer became aware in 1977 that he had virtually no hearing in his left ear; upon learning that, his employer disqualified him from operating any wrecker or crane or working in the train yard. Chatham's employer apparently again in 1982 restricted him from operating a crane, because he was then wearing a hearing aid. Chatham learned from a physician in 1983 that the total hearing loss in his left ear was due to an earlier illness, but that he had sustained an untreatable hearing loss in his right ear due to his work environment at the railroad. (Deposition Exhibit 1, attached to defendant's motion for summary judgment, at R.15.) Chatham contends that, at his employer's request, he received hearing loss tests at various times throughout the course of his employment.
Interpretation of FELA claims and the determination of the degree of negligence necessary to support an FELA claim are questions governed by federal law. See Southern Ry. v. Roberts,380 So.2d 774, 776 (Ala. 1980), overruled on other grounds,Tidball v. Orkin Exterminating Co., 583 So.2d 239 (Ala. 1991). "The 'slight negligence' necessary to support an FELA action is defined as a failure to exercise great care and that burden of proof is much less than the burden required to sustain recovery in ordinary negligence actions." Id. Federal courts have interpreted two Supreme Court cases, Urie v. Thompson,337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), and United States v.Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), to mean that an FELA claim accrues, and the statutory period of limitations begins to run, "when the plaintiff possesses sufficient critical facts from which the injury and its cause, including its work-relatedness, should be plainly known." McCoyv. Union Pac. R.R., 102 Or. App. 620, 623-24, 796 P.2d 646, 648
(1990) (citing DuBose v. Kansas City Southern Ry.,729 F.2d 1026, 1030 (5th Cir.), cert. denied, 469 U.S. 854,105 S.Ct 179, 83 L.Ed.2d 113 (1984)). Thus, a cause of action under the FELA arises when a claimant is, or reasonably should be, aware of his or her injury and knows, or in the exercise of reasonable diligence should know, of facts that indicate that the cause of the injury is work related.
Chatham admits that he was aware in 1983 of his hearing loss in his right ear and of its work-relatedness. He contends that the running of the limitations period should be tolled under the "continuous tort" doctrine of Fowkes v. Pennsylvania R.R.,264 F.2d 397 (3d Cir. 1959). The continuous tort doctrine applies when an employer repeatedly exposes an employee to an occupational hazard, the deleterious effects of which accumulate over a period of time greater than the applicable period of limitations before the employee becomes aware of any injury.
Although the injury in Fowkes evolved from a series of incidents over a long time, the case is narrowly interpreted by most federal courts because the plaintiff in Fowkes did not discover his injury and its work-related cause until within three years of filing suit.[1] "Fowkes can be fairly read as implying that had identification of the injury and its cause occurred before employment terminated, the discovery of injury (and cause) rather than the cessation of work would have marked the beginning of the limitations period." Kichline v.Consolidated Rail Corp., 800 F.2d 356, 359 (3d Cir. 1986). We adhere to this clarification, which brings Fowkes in line with modern application of the continuing tort doctrine to FELA cases. *Page 345 
Chatham further relies on Fletcher v. Union Pac. R.R. for the following proposition:
 "Where an injury is caused by continuing or repeated acts, the statute of limitations may not begin to run even when the tort is complete. The statute of limitations may be tolled until the tortious conduct ceases, on the theory that one should not be allowed to acquire a right to continue the tortious conduct. An employee's right of action against his employer for personal injuries may be tolled until the last day the employee was subjected to the conditions causing the injury."
Fletcher v. Union Pac. R.R., 621 F.2d 902, 908 (8th Cir. 1980),cert. denied, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839
(1981). (Citations omitted.)
Chatham's reliance on Fletcher is misplaced as far as it applies to any tolling of the limitations period on Chatham's original claim, because the passage quoted from Fletcher
concerned the question whether the limitations period had run on Fletcher's negligent assignment claim; that period was distinguishable from the limitations period for the claim for the original injury. Id. at 907. Because Chatham was aware of his injury and its cause in 1983, but did not sue until 1990, the limitations period ran out on his original FELA claim for damages based on injuries suffered before 1987, notwithstanding the continuing tort doctrine. See Kichline, supra, 800 F.2d at 360. For the above reasons, we hold that Chatham's original cause of action was time-barred, and that the trial court properly entered the summary judgment for CSX as to Chatham's claim for damages incurred before 1987.
It does not follow, however, that the running of the original limitations period has eliminated all of Chatham's claims against CSX. Id. at 361. Chatham brought two additional claims alleging negligent assignment and continuous exposure (aggravation), in his amended complaint. These claims represent separate FELA causes of action to which the continuous tort doctrine may apply; if it applies, the running of the limitations period is tolled as long as the employer's negligent conduct continues. Kichline v. Consolidated RailCorp., 630 F. Supp. 50, 55 (E.D.Pa. 1985), affirmed in part,remanded in part, 800 F.2d 356 (3d Cir. 1986); Fletcher, supra, at 907-08 (negligent assignment).[2]
The continuous tort doctrine, when applied in FELA cases, allows a plaintiff to have a cause of action against his or her employer for the worsening of existing injuries even though the limitations period has expired on the original cause of action based on the original injury. The running of the statutory period is tolled on the plaintiff's subsequent claims in order to prevent an employer from acquiring the right to continue tortious conduct merely because the employee is aware of the injury and its cause. Fletcher, supra, at 908. This tolling of the running of the limitations period serves only to protect a claimant's right to file an FELA claim alleging aggravation or negligent assignment; it is not intended to allow a potential claimant knowingly to accumulate further injury and thereby increase his or her damages, because such a policy would be contrary to the goals of the FELA. See Lloyd v. Missouri Pac.R.R., 832 S.W.2d 310, 313 (Mo.App. 1992).
The vast majority of courts limits recovery to only those damages for injuries (or worsening of existing conditions) that have accrued within the three years before the *Page 346 
filing of the action. Because only the most recent injury can be compensated, this promotes the purpose behind the statute of limitations by preventing a claimant from purposefully accumulating injuries over the years in an attempt to increase potential damages awards before finally bringing an FELA claim. Although we think it unrealistic to assume that a potential FELA claimant would knowingly suffer additional injury for the chance of a higher damages award, some courts have used this argument to prevent claims for aggravation of injuries occurring within three years of filing the action once the original statute of limitations has run. See Lloyd, supra;Frasure v. Union Pac. R.R., 782 F. Supp. 477 (C.D.Cal. 1991).
Aggravation and negligent assignment are two distinct causes of action containing separate elements of proof; both require a showing of employer negligence, but a claim of negligent assignment requires additional proof that the employer was aware of the employee's condition. Kichline, supra, 800 F.2d at 361.
Chatham can claim damages for aggravation of his hearing loss if he can show a deterioration in his hearing caused by his work environment during the three years before he filed this action and can establish the railroad's negligence in exposing him to injurious working conditions, even if CSX was unaware of his existing hearing impairment. See id. We note that Chatham's awareness of potential additional work-related hearing loss during that period might not bar his claim for aggravation, but rather would go to the issue of contributory negligence. Id.
A trial court errs in entering a summary judgment if a factual issue exists as to whether any actionable claim remains for hearing loss that accrued within the statutory period before the filing of the action. Billman v. Missouri Pac. R.R.,825 S.W.2d 525, 528 (Tex.Ct.App. 1992). Whether CSX was negligent, whether additional hearing loss occurred during the statutory period, and, if so, whether such loss was caused by Chatham's work environment, are genuine issues of material fact that, if properly raised before the trial court and when taken in the light most favorable to the nonmovant, could preclude a summary judgment on Chatham's aggravation claim.
Chatham failed, however, to raise any of these issues in a sworn affidavit based on personal knowledge, or in any other form admissible in evidence, as is required of a nonmovant when opposing a properly supported motion for summary judgment. The documents attached to Chatham's brief in opposition to summary judgment that could have raised a genuine issue of material fact were not properly authenticated, and they were, thus, inadmissible hearsay that cannot be relied on to defeat a motion for summary judgment. Perry v. Mobile County, supra, at 604. CSX moved the trial court to strike the inadmissible evidence; thus, we may not consider it on appeal. Id. at 604-05. Because nothing in the record indicates that Chatham presented any admissible evidence in opposition to CSX's motion for summary judgment, we cannot say that the trial court erred in entering the summary judgment for CSX as to Chatham's aggravation claim. Therefore, we affirm that portion of the summary judgment that relates to the aggravation claim.
Similar reasoning applies to our review of the trial court's summary judgment against Chatham's negligent assignment claim for any alleged hearing loss suffered within three years of filing suit. A claim of negligent assignment requires proof that the employer knew of its employee's injury but nevertheless assigned that employee to unsuitable work,Kichline, supra, 800 F.2d at 361, or failed to provide the employee adequate protection from continuing harm. "Whether the assignment was negligent is a question of fact." Fletcher,supra, at 909 (citations omitted).
 "[A] plaintiff's cause of action in any FELA case accrues when he is aware of his injury and its cause. If he then brings his injury to the defendant employer's attention but it refuses to correct the employment conditions that caused the plaintiff's problem or a different *Page 347 
problem is caused thereby, the plaintiff may acquire a separate FELA cause of action. As to that action, the statute of limitations may be tolled as long as the negligent or intentional conduct persists. The case law makes it quite clear, however, that there can be no continuous injury cause of action in the absence of the defendant's knowledge that its conduct caused or contributed to plaintiff's injury. This analysis and conclusion serves two interests. For just as a defendant should not acquire a right to persist in harmful conduct, neither should a plaintiff acquire a right to remain in adverse conditions, unknown to the defendant, and increase his damages thereby."
Kichline, supra, 630 F. Supp. at 55.
Once a plaintiff in a negligent assignment case proves that injury
 "results from a negligent act and the injury continues by reason of continued [employer] negligence, a recovery may be had for damages caused by the continuing negligence although a cause of action based on the original negligent act is barred."
Fletcher, supra, at 907-08. The plaintiff must show that the assignment caused his present condition, and causation under the FELA is shown if "the railroad's negligence played any part, however small, in the injury which is the subject of the suit." Id. at 909 (citations omitted). The injury may be due to "the cumulative effect of a series of incidents." Id. Finally, the plaintiff must prove that the repeated assignment was, in fact, negligent; negligence is shown if it is shown that the railroad "knew or should have known that its assignment exposed the employee to an unreasonable risk of harm." Id. (citations omitted). Furthermore, "[t]he employee's knowledge of his physical condition does not absolve the railroad of its duty to protect the employee from further injury." Id. (citations omitted).
CSX denies Chatham's claim that it was aware of Chatham's hearing disability and yet continued to subject him to excessive noise levels. Evidence in the record that could support Chatham's opposition to the motion for summary judgment is not in admissible form. CSX moved to strike the inadmissible evidence. Therefore, as with the aggravation claim, the trial court properly disregarded this evidence and properly entered the summary judgment against Chatham on his negligent assignment claim.
For the reasons above, we affirm the summary judgment in favor of CSX on all of Chatham's claims.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN, OPINION SUBSTITUTED; AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] The limitations period in Fowkes did not begin to run until after the employee's last day at work, when he was no longer exposed to an adverse work environment.
[2] Both Fletcher and Kichline indicate that the employer's knowledge of the employee's condition is necessary to toll the running of the limitations period on a negligent assignment claim under the FELA. The lower court decision in Kichline, requiring a plaintiff to inform his employer that his condition was being aggravated by his work environment,630 F. Supp. at 56, was vacated on appeal to allow the plaintiff "to claim damages for the aggravation of his physical condition that occurred between [the date three years before suit was filed and the date plaintiff's employment ended]." Kichline, 800 F.2d at 361. Thus, although a plaintiff in an aggravation claim need not show the employer knew of the plaintiff's existing condition, the plaintiff must prove the employer's negligence in exposing the plaintiff to hazardous working conditions. Id.